<u>FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

In re:

**JAMES M. ROMANO,**

                          Debtor.

-------------------------------------------------------- x

Chapter 13

Case No. 10-36381 (CGM)

-------------------------------------------------------- x

**LINDA S. ROMANO,**

                          Plaintiff,

      v.

**JAMES M. ROMANO,**

                       Defendant.

Adv. No. 15-09028 (CGM)

-------------------------------------------------------- x

**MEMORANDUM DECISION AND ORDER GRANTING AND DENYING IN PART
PLAINTIFF'S AND DEFENDANT'S CROSS-MOTIONS FOR SUMMARY JUDGMENT**

<u>**A P P E A R A N C E S**</u> **:**

Silver & Lesser, P.C.
3250 Route 9W
New Windsor, New York 12553
*Counsel for Plaintiff*
     By:    Sol Lesser

Genova & Malin, Attorneys
The Hampton Center
1136 Route 9
Wappingers Falls, NY 12590-4332
*Counsel for Defendant*
     By:    Andrea B. Malin

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Before the Court is Plaintiff Linda Romano's motion for summary judgment, seeking a determination that certain debts of Defendant James Romano are non-dischargeable domestic support obligations under 11 U.S.C. § 523(a)(5), and non-dischargeable debts incurred for willful and malicious injury under 11 U.S.C. § 523(a)(6).  *See* Mem. Law Supp. Pl.'s Mot. Summ. J. 6, Mar. 1, 2016, ECF No. 14 ("Pl.'s Mot.").[1]  Also before the Court is Defendant's motion for summary judgment, seeking a determination that these contested debts were in fact discharged by Defendant's chapter 13 bankruptcy case.  Mem. Law Supp. Def.'s Mot. Summ. J. 1–2, Mar. 2, 2016, ECF No. 15-3 ("Def.'s Mot.").  For the reasons stated below, the Court grants Plaintiff's motion for summary judgment for the relief sought under § 523(a)(5), and denies Plaintiff's motion insofar as it seeks relief under § 523(a)(6).  The Court correspondingly denies Defendant's motion for a determination of dischargeability under § 523(a)(15), and grants Defendant's motion for summary judgment on Plaintiff's cause of action based on § 523(a)(6) grounds.

## Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012.  This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(I).

---

[1] Unless otherwise indicated, references to documents filed in this case can be found on the docket of adversary proceeding 15-09028.

## Background

James Romano ("Debtor" or "Defendant") filed his chapter 13 bankruptcy petition on

May 11, 2010 and has completed his chapter 13 plan.  *See* Petition, *In re Romano*, No. 10-36381

(Bankr. S.D.N.Y. May 11, 2010), ECF No. 1.  Defendant's wife, Linda Romano ("Plaintiff"),

brings this adversary proceeding for a declaration that the debts owed to her and to Federal

National Mortgage Association ("Fannie Mae") are non-dischargeable domestic support

obligations.  *See* Compl. ¶ 1, Oct. 29, 2015, ECF No. 1.  Defendant and Plaintiff do not currently

reside together.  *See* Pl.'s Resp. to Def.'s Statement of Material Facts ¶ 4, Mar. 16, 2016, ECF

No. 17 ("Pl.'s Resp. SMF").  The complaint, filed on October 29, 2015, alleges that although still

legally married, Defendant and his wife entered into a Separation and Property Settlement

Agreement ("Settlement Agreement") on May 18, 2009.  Compl. ¶ 9.

Plaintiff's complaint alleges the Settlement Agreement requires the Defendant to

continue to pay the monthly mortgage payments, real property taxes, insurance, and a substantial

amount of the utilities.  *Id.*   Plaintiff asserts Defendant was to pay her $100 a week in spousal

maintenance payments.  *Id.* at ¶ 23.  Plaintiff claims that around August 2011, Defendant stopped

making these payments.  *Id.* at ¶ 24.  Plaintiff seeks to have the court declare these payments to

be domestic support obligations and to find them to be non-dischargeable debts of the Defendant.

*Id.* at ¶¶ 22–26.  Plaintiff also seeks a declaration that the debts are non-dischargeable under

§ 523(a)(6), claiming Defendant willfully and maliciously refused to pay her the above amounts

under the Settlement Agreement.  *Id.* at ¶¶ 27–30.

On November 18, 2015, Defendant filed an answer.  *See* Answer, Nov. 18, 2015, ECF

No. 6.  Defendant denies all of Plaintiff's allegations.  *See id.* at ¶ 2.  Defendant also

counterclaims that Plaintiff filed this claim as a general unsecured claim after the date to object

to discharge had already passed.  *See id.* at ¶¶ 4–5.

Plaintiff filed a motion for summary judgment on March 1, 2016. *See* Pl.'s Mot.

Plaintiff claims Defendant owes her ongoing domestic support obligations, including weekly

$100 maintenance payments, the mortgage payments, and other bills related to the marital

property. *Id.* at 12–16. Plaintiff argues these are non-dischargeable under § 523(a)(5). *Id.*

Plaintiff also alleges Defendant is in arrears on his maintenance payments and other support

obligations. Pl.'s Statement of Undisputed Material Facts ¶ 18, Mar. 1, 2016, ECF No. 14 ("Pl.'s

SMF"). Plaintiff asserts Defendant did not make the $100 weekly maintenance payments from

August 1, 2011 through January 1, 2015. *Id.* ¶ 21. Plaintiff claims Defendant has not made any

post-petition mortgage payments since September 1, 2011, nor has he paid the oil, propane,

electric, or water bills since August 1, 2011. *Id.* ¶¶ 19–20.

Plaintiff claims equitable considerations require tolling of the time to file an objection to

discharge per Federal Rule of Bankruptcy Procedure 4007(c). Pl.'s Mot. 7. Plaintiff claims she

was omitted from Debtor's voluntary petition and was not given notice of the 11 U.S.C. § 341

meeting of creditors, and that Debtor filed a late proof of claim on her behalf, which incorrectly

classifies the debt as a general unsecured claim. *Id.* Plaintiff is legally blind and 100% disabled

and claims she did not become aware of Defendant's default in certain domestic support and

maintenance obligations until the parties' mortgagee, Fannie Mae, commenced judicial

foreclosure proceedings against the marital residence in the Supreme Court of the State of New

York. *See* Pl.'s SMF ¶ 10. Plaintiff claims she did not have notice of any of the bankruptcy

proceedings. *Id.* ¶ 13. Plaintiff only became aware of Debtor's bankruptcy filing and Chapter 13

plan through the letter from Debtor's bankruptcy counsel, dated September 16, 2010. *Id.*

Plaintiff claims that in drafting the terms of the Settlement Agreement, the parties intended to create a debt necessary for Plaintiff's support. Pl.'s Mot. 9–10. Plaintiff urges this Court to interpret the Settlement Agreement as a matter of law on summary judgment. *Id.*

Plaintiff also claims that the Defendant's liability on the mortgage, as well the missed payments, are non-dischargeable obligations pursuant to § 523(a)(6), as a debt incurred by willful and malicious injury. *Id.* at 17. Plaintiff claims Defendant has refused to participate in the sale of the residence and the foreclosure action. *Id.* at 19. Plaintiff states that should the residence be sold, Defendant is entitled to the equity in the residence. *Id.* at 13. Plaintiff claims Defendant willfully and maliciously disregarded his obligation to pay Plaintiff's support and maintenance, and that a discharge of his liability on the mortgage would be a willful and malicious disregard of those obligations in the future. *Id.* at 18–20.

On March 2, 2016, Defendant filed a cross-motion for summary judgment. *See* Def.'s Mot. Defendant argues that Plaintiff's claims for non-dischargeability under § 523(a)(6) must be denied as they were not timely filed pursuant to Federal Rule of Bankruptcy Procedure 4007(c). *Id.* at 2–5. Defendant further argues that Plaintiff cannot prove the debt was incurred willfully or maliciously. *Id.* at 5–9.

Defendant claims that Plaintiff is bound by her treatment under Defendant's confirmed chapter 13 plan as an unsecured claim. *Id.* at 9. Defendant argues that a claim, even a claim filed by the debtor, is presumed valid unless a party in interest objects. *Id.* at 10. Defendant argues Plaintiff received timely notice of the case and the plan. *Id.* at 11. Defendant also asserts that the confirmation order is *res judicata* and that such a late objection to claim should not be allowed here, even if the debt is non-dischargeable. *Id.* at 15–17.

Defendant further claims that the debt is not a domestic support obligation and is instead a debt to a spouse incurred in connection with a divorce or separation under § 523(a)(15), which is dischargeable under § 1328(a). *Id.* at 11–12. Defendant claims the debt to Plaintiff did not end on death or remarriage, and instead ended with a sale of the property. *Id.* at 14. Further, Defendant claims the language of the Settlement Agreement evidences an intent to create a property settlement, not a domestic support obligation. *Id.* at 14–15.

Both parties filed opposition papers to the other's motion for summary judgment. *See* Pl.'s Aff. in Opp'n to Def.'s Summ. J., Mar. 16, 2016, ECF No. 16; Mem. Law in Reply to Pl.'s Mot. Summ. J., Mar. 16, 2016, ECF No. 20. The Court notes the opposition papers and has taken them into consideration. Further, the parties' cross-motions argue the same issues. As such, the Court will resolve the cross-motions on an issue-by-issue basis.

## Discussion

There are two types of discharge provided for in a chapter 13 under 11 U.S.C. § 1328. Under § 1328(a), if the debtor makes all required plan payments the debtor is eligible for a full compliance discharge. *See* 11 U.S.C. § 1328(a); *Ambassadors Travel Servs. v. Liescheidt (In re Liescheidt)*, 404 B.R. 499, 503 (Bankr. C.D. Ill. 2009). Where the debtor is unable to make all plan payments, the debtor may apply for a hardship discharge under § 1328(b). *See, e.g.*, *In re Lizzi*, 2015 WL 1576513, at *3 (Bankr. N.D.N.Y. Apr. 3, 2015). The debtor may receive a hardship discharge only if the debtor proves the three required statutory conditions are met. 11 U.S.C. § 1328(b)(1)–(3); *In re Inyard*, 532 B.R. 364, 366 (Bankr. D. Kan. 2015).

Although a discharge under § 1328(a) is broader, a full compliance discharge does not discharge the debtor for any debts "of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a)[.]" 11 U.S.C. § 1328(a)(2). The

debts excepted from a full compliance discharge do not include § 523(a)(6), debts for "willful

and malicious injury."  A debtor who makes all plan payments and receives a full compliance

discharge "is discharged from debts arising from willful and malicious conduct, since paragraph

(a)(6) of Section 523 is not a stated exception . . . ." *Ambassadors Travel Servs.*, 404 B.R. at

504; *see also Handeen v. LeMaire (In re LeMaire)*, 898 F.2d 1346, 1348 (8th Cir. 1990); *Graves

v. Myrvang (In re Myrvang)*, 232 F.3d 1116, 1122 (9th Cir. 2000); *Solomon v. Cosby (In re

Solomon)*, 67 F.3d 1128, 1131 (4th Cir. 1995).  In a case where the debtor is on track to receive a

full compliance discharge, "there is no reason to litigate the issue of whether the [disputed] debt

is, in fact, one for a willful and malicious injury.  Whether it is or isn't doesn't matter, since it

will be discharged either way if the debtor receives a full compliance discharge." *Ambassadors

Travel Servs.*, 404 B.R. at 504.

On the other hand, a hardship discharge does not discharge any of the debts in §523(a).

11 U.S.C. § 1328(c).  As a result, in a chapter 13, a determination of non-dischargeability

pursuant to § 523(a)(6) is only relevant where the debtor receives a hardship discharge, which is

not a regular occurrence.  *Lowry v. Nicodemus (In re Nicodemus)*, 497 B.R. 852, 857 n.2 (B.A.P.

6th Cir. 2013) (quoting *Ambassadors Travel Servs.*, 404 B.R. at 505).  In other words, "unless

and until Debtors seek a hardship discharge under § 1328(b), § 523(a)(6) is unavailable as a basis

for nondischargeability." *Toste v. Smedberg (In re Toste)*, 2014 Bankr. LEXIS 3441, at *6

(B.A.P. 9th Cir. Aug. 12, 2014) (citations omitted).

Here, Defendant received a full compliance discharge on December 7, 2015.  All debts

incurred pursuant to § 523(a)(6) for willful and malicious injury were discharged as a matter of

law.  The non-dischargeability exception under § 523(a)(6) is inapplicable here, regardless of

whether Plaintiff's objection to dischargeability was timely filed.  Reference to the timing

requirements of Federal Rule of Bankruptcy Procedure 4007(d) confirms that debts incurred

pursuant to § 523(a)(6) are only non-dischargeable in a chapter 13 when there is a hardship

discharge.  *See* Fed. R. Bankr. P. 4007(d).[2]  Plaintiff's argument that Defendant's discharge for

the mortgage should be denied based on § 523(a)(6) is denied.

Except for the grounds specified in 11 U.S.C. § 523(c), not relevant here, a complaint

objecting to discharge based on § 523, "may be filed at any time.  A case may be reopened

without payment of an additional filing fee for the purpose of filing a complaint to obtain a

determination under this rule."  Fed. R. Bankr. P. 4007(b).  As the notice of the § 341 creditors'

meeting and the deadlines to object to confirmation and dischargeability in this case confirm,

only objections to discharge based on § 523(a)(2) or (a)(4) must be made by the objections'

deadline.  *See* Notice of Chapter 13 Bankruptcy Case, *In re Romano*, No. 10-36381, ECF No. 6.

Bankruptcy Rule 4007(b) permits cases to be reopened for the purpose of determining the

dischargeability of debt.  Plaintiff's motion to determine the dischargeability of debt pursuant to

§ 523(a)(5) is timely.

Here, the confirmation order does not purport to discharge Defendant from any ongoing

maintenance obligations to the Plaintiff.  Pursuant to Federal Rule of Bankruptcy Procedure

3004, as Plaintiff did not "timely file a proof of claim under Rule 3002(c) or 3003(c)," Defendant

filed a claim for Plaintiff on October 12, 2010 within 30 days of the claims bar date on

September 14, 2010.  Defendant subsequently filed his first amended plan on October 25, 2010,

which, per the affidavit of service on the docket, was served on "Linda Romano, 216 Woodcock

Mountain Road, Washingtonville, NY 10992-1820."  *See* Affidavit of Service of Amended

---

[2] Federal Rule of Bankruptcy Procedure 4007(d) states that where a chapter 13 debtor moves
for a discharge under § 1328(b), the court shall enter an order fixing the time to file a complaint to
determine the dischargeability of any debt under § 523(a)(6) and shall give no less than 30 days'
notice of the time fixed to all creditors in the manner provided in Rule 2002.

Chapter 13 Plan, *In re Romano*, No. 10-36381, ECF No. 10-1.  Section 5(a) of the Defendant's

plan, dealing with priority, unsecured claims for "Unsecured Domestic Support Obligations,"

provides that "Debtor's maintenance obligation to his former spouse shall remain unaffected by

his Chapter 13 Plan."  Amended Chapter 13 Plan 7, *In re Romano*, No. 10-36381, ECF No. 10.

Subsection (a) also distinguishes the maintenance obligation from certain joint credit card

payment obligations, not in dispute here, stating that the credit card obligations will be

discharged upon completion of the plan.  *Id.*

      That Defendant's chapter 13 plan provided for ongoing maintenance payments to

Plaintiff does not change the nature of the disputed debt.  *In re Westerfield*, 403 B.R. 545, 550

(Bankr. E.D. Tenn. 2009).  The maintenance obligations are either dischargeable or non-

dischargeable in Defendant's chapter 13.  Defendant is not entitled to overrule the

dischargeability of a debt that is excepted from discharge under § 1328(a)(2) by merely

providing for payment of the claim in the plan.

      A non-dischargeable domestic support obligation under § 523(a)(5) is defined by the

Bankruptcy Code as a debt that is

    (A) owed to or recoverable by--
        (i) a spouse, former spouse, or child of the debtor or such child's parent,
        legal guardian, or responsible relative; or
        (ii) a governmental unit;
    (B) in the nature of alimony, maintenance, or support (including assistance
provided by a governmental unit) of such spouse, former spouse, or child of the
debtor or such child's parent, without regard to whether such debt is expressly so
designated;
    (C) established or subject to establishment before, on, or after the date of the order
for relief in a case under this title, by reason of applicable provisions of--
        (i) a separation agreement, divorce decree, or property settlement
        agreement;
        (ii) an order of a court of record; or
        (iii) a determination made in accordance with applicable nonbankruptcy
        law by a governmental unit; and

    (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).  In order to qualify as a domestic support obligation, all four requirements must be satisfied.  The Defendant agrees that the only issue in dispute here is whether the Settlement Agreement provides for payments "in the nature of alimony, maintenance, or support" as required by § 101(14A)(B).  That the parties are still married has no bearing on the effectiveness of the separation agreement.  The separation agreement is a binding and enforceable contract between the parties.  *See, e.g.*, *Simonds v. Simonds*, 380 N.E.2d 189, 193 (N.Y. 1978).

    The determination of what constitutes a domestic support obligation is to be based on principles of federal law.  *Forsdick v. Turgeon*, 812 F.2d 801, 802 (2d Cir. 1987).  The bankruptcy court is not bound by how state law would categorize a particular obligation.  *Biggs v. Biggs (In re Biggs)*, 907 F.2d 503, 504 (5th Cir. 1990).  Despite the fact federal law controls, a bankruptcy court is not precluded from reference to state law on the matter of domestic support obligations.  *Pauley v. Spong (In re Spong)*, 661 F.2d 6, 9 (2d Cir. 1981).

    The party arguing that the debt is non-dischargeable has the burden of proof.  *See* Fed. R. Bankr. P. 4005.  "In determining whether or not an obligation is designed for the support of a former spouse, the court must look beyond the separation agreement to the intent of the parties and to the substance of the obligation."  *Freyer v. Freyer (In re Freyer)*, 71 B.R. 912, 916 (Bankr. S.D.N.Y. 1987) (citing *Long v. West (In re Long)*, 794 F.2d 928, 931 (4th Cir. 1986); *Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir. 1986); *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir. 1984)).  "Courts in the Second Circuit take a broad reading of the phrase 'in the nature of support' in dischargeability disputes."  *In re Conte*, 2012 Bankr. LEXIS 4695, at *14 (Bankr.

E.D.N.Y. Oct. 3, 2012) (quoting *Peters v. Hennenhoeffer (In re Peters)*, 133 B.R. 291, 295

(Bankr. S.D.N.Y. 1991)).

> Courts have considered a variety of factors to assess whether the parties intended to

create a non-dischargeable domestic support obligation, including

> (1) whether the obligation imposed was designed to rehabilitate or assist the
> spouse's rehabilitation after the divorce; (2) whether the obligation is subject to
> contingencies such as remarriage or death; (3) whether the obligation is payable in
> installments or a lump sum; (4) the structure of the terms of the final decree; and
> (5) whether there was a division of property and debts.

*Vittorini v. Vittorini (In re Vittorini)*, 136 B.R. 632, 635 (Bankr. S.D.N.Y. 1992) (citations

omitted).  Additionally, courts have also looked to the following:

> (1) The nature of the obligations assumed; necessities indicating the agreement is
> more in the nature of alimony;
> (2) The structure and terms of the contract-i.e., does the agreement evidence an
> intent or purpose to grant alimony;
> (3) Whether the agreement includes a provision for the support of children;
> (4) The relative earning power of the spouses;
> (5) The parties' negotiations and understandings of the provisions;
> (6) The reasonableness of the assumption given the financial condition of the
> debtor;
> (7) Whether there was a division of property and a division of the debts relating to
> that property;
> (8) Whether the former spouse was shown to have suffered in the job market, or
> was otherwise disadvantaged because of any dependent position held in relation
> to the debtor during the marriage; and
> (9) The age and health of the former spouse.

*Tsanos v. Bell (In re Bell)*, 47 B.R. 284, 287 (Bankr. E.D.N.Y. 1985) (citations omitted).

Although a variety of factors are helpful, the Second Circuit has held that any list of factors is

not exclusive, and that "[a]ll evidence, direct or circumstantial, which tends to illuminate the

parties' subjective intent is relevant."  *Brody v. Brody (In re Brody)*, 3 F.3d 35, 38 (2d Cir. 1993)

(citations omitted).

The Settlement Agreement's terms state that it will be "lawful for the parties hereto at all times to live separate and apart from each other . . . ." Pl.'s Mot. Ex. A, at 2. The Settlement Agreement makes provisions for the marital residence of the parties. *Id.* at 3–5. The proceeds of the sale were to be divided equally between the parties. *Id.* at 4. "Pending its sale, the wife will have exclusive possession of the marital residence . . . ." *Id.* at 3. The marital residence was to be put "on the market for sale on February 1, 2012." *Id.* Prior to sale,

> [d]uring the wife's exclusive occupancy, the husband shall pay the mortgage, taxes and homeowner's insurance in the amount of $1,408.52 per month, the oil bill up to a cap of $2,000.00 per year, the propane up to a cap of $200.00 per year, the electric up to a cap of $60.00 per month, and the water bill up to a cap of $360.00 per year.

*Id.* at 4. The Settlement Agreement indicates that at the time of closing, Defendant "will be entitled to a credit for the diminution of principal on the mortgage created by his mortgage payments between the date of this agreement and the sale of the property." *Id.* at 4–5.

The Settlement Agreement further provides for "Maintenance." The terms state that

> [t]he husband agrees to pay to the wife the sum of $100.00 per week, in addition to the expenses heretofore listed, until such time as the marital home is sold. When the husband's pension goes into pay status, or he reaches the age of 62, whichever occurs first, the wife will be entitled to receive the Tier II portion of his Federal Railroad Retirement pension, at which time all maintenance would cease. If the husband's pension is not in pay status at the time of the sale of the marital home, the husband will pay to the wife the sum of $500.00 per month as and for maintenance from the date of closing until May 8, 2014 (husband's 62nd b/d).

*Id.* at 6–7. Under the Settlement Agreement, Defendant was required to pay Plaintiff $100 a week until their home was sold, unless Plaintiff became entitled to receive the Tier II portion of his pension before any sale took place. If the property sold and Plaintiff was not yet entitled to her portion of the pension, Defendant was still obligated to pay Plaintiff until his 62nd birthday.

The Settlement Agreement evidences the intent that Plaintiff was to receive support either in the form of regular monthly payments from Defendant or from his pension. Plaintiff is legally

blind and, other than Defendant's maintenance payments, depends on social security disability payments of $850 a month. Aff. of Pl. in Supp. Pl.'s SMF ¶ 31, Mar. 1, 2016, ECF No. 14. Plaintiff is unable to secure employment due to her health condition. Pl.'s Mot. 13. The maintenance was to be made in installment payments either weekly, if Plaintiff remained in the house, or monthly if the house was sold. The monetary assistance was intended to be ongoing. Whether the property was sold or not, Plaintiff was supposed to receive payments. These payments were to continue regardless of divorce, as the Settlement Agreement contained a non-merger clause.

The Court also finds that the parties intended for Defendant to support Plaintiff through his payment of the mortgage, taxes, and homeowners' insurance, as well as the oil, propane, electric and water bills. As Defendant admits in his Statement of Undisputed Facts in Response, "Defendant believed the residence would be sold in 3 to 6 months and thus [] agreed to pay the expenses, assuming it would not be a long term duty." *See* Def.'s Statement of Facts in Resp. to Pl.'s SMF ¶ 10, Mar. 16, 2016, ECF No. 19 ("Def.'s Resp. SMF"). That Defendant did not anticipate the house would not be sold within that time frame does not change the nature of the payments promised. Without the sale of the house, Plaintiff has no other source of equity, that the Court is aware of, to support herself. Until the house sold and the proceeds were divided up, Plaintiff depended on the support provided by Defendant to maintain her residence on the property. Even after the sale of the home, the maintenance payments continued until Plaintiff received an alternative source of income—Defendant's pension.

The Settlement Agreement does not provide a contingency plan in the event the parties failed to sell the home. Per the terms of the Settlement Agreement, Defendant promised to support Plaintiff during her exclusive occupancy of the house. If Defendant believes Plaintiff

breached the Settlement Agreement and is no longer entitled to benefit from its terms, that is for

a state court to decide.  Both parties agree that the Settlement Agreement before this Court is the

operative legal document to be construed.  *See, e.g.*, Def.'s Mot. 13–14; Def.'s Statement of

Undisputed Facts ¶ 4, Mar. 2, 2016, ECF No. 15; Pl.'s SMF ¶¶ 4–5; Def.'s Resp. SMF ¶ 2.  Its

terms do not allow Defendant to cease making the mortgage payments, taxes, or homeowners'

insurance, on the property, or to stop paying the oil, propane, electric and water bills in the event

the house is not sold.

Further, Defendant's chapter 13 plan clearly states that the ongoing maintenance

payments to Plaintiff were unaffected by his plan.  *See* Amended Chapter 13 Plan 7, *In re

Romano*, No. 10-36381, ECF No. 10.  The plan did not even purport to discharge the

maintenance obligations.  The Court finds that the maintenance payments fall within the well-

established parameters of a domestic support obligation as defined under the bankruptcy code

and are non-dischargeable under § 523(a)(5).

In conclusion, the Settlement Agreement creates a non-dischargeable domestic support

obligation under § 523(a)(5), which includes two sets of payments.  "During the wife's exclusive

occupancy [of the marital residence], the husband shall pay the mortgage, taxes and

homeowner's insurance in the amount of $1,408.52 per month, the oil bill up to a cap of

$2,000.00 per year, the propane up to a cap of $200.00 per year, the electric up to a cap of $60.00

per month, and the water bill up to a cap of $360.00 per year."  Additionally, Defendant has a

non-dischargeable domestic support obligation under § 523(a)(5) which requires him to pay "the

sum of $100.00 per week . . . until such time as the marital home is sold."  Regardless of whether

the marital home is sold, "all maintenance will cease" upon Plaintiff's receipt of her share of

Defendant's pension, with the latest date of that occurrence expected to be May 8, 2014.

## <u>Conclusion</u>

For the foregoing reasons, Plaintiff's motion for summary judgment based on § 523(a)(5)

grounds is granted to the extent set forth above by the Court.  Defendant's motion for summary

judgment on Plaintiff's fourth cause of action, seeking relief under § 523(a)(6), is granted.  The

Court makes no determination as to the amount of debt owed—that is for a state court to

determine.  The Court will issue a separate order in conformity with the above decision.



/s/ Cecelia G. Morris

_____

**Dated: April 8, 2016**
      **Poughkeepsie, New York**

**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**